UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICHARD NATHANIEL MILLER                    CIVIL ACTION

VERSUS                                      NO.  12-2806

JAMES M. LEBLANC, STEVE C. RADER,           SECTION "A"(5)
WARDEN

REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE.**[1]

I.    Facts and Procedural History

Petitioner, Richard Nathaniel Miller, is a state prisoner incarcerated in the Dixon Correctional Institute, in Jackson,

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, or that the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

Louisiana.  On April 2, 1998, Miller was charged with possession of 28 to 200 grams of cocaine, La. R.S. 40:967(F)(1)(a), possession of marijuana with intent to distribute, La. R.S. 40:966(A)(1), and possession of a firearm by a convicted felon, La. R.S. 14:95.1.[2] Miller entered a plea of not guilty.[3]   The firearm count was severed[4] and he proceeded to trial on the other counts.   The following facts were established at trial and summarized by the Louisiana Fourth Circuit Court of Appeal:

> On November 5, 1997, probation and parole agents from the Department of Corrections were armed with an arrest warrant for the defendant for parole violations.  A group of agents went to 1826 Flood Street; and as they approached the residence, they saw the defendant standing in the doorway of the living room.  When the defendant saw the agents, he fled into the house.  The agents followed and captured him in a front bedroom.  The agents arrested him; and, a search incident to the arrest revealed forty-three small packages of marijuana found in his jacket pocket, and another bag in his pants pocket containing fifteen pieces of crack cocaine.  They also seized from his person shotgun shells and $220.00.
>
> Lying in plain view on the top of a television in the bedroom was a bag of marijuana seeds, and a gun was on a television table.  The agents then searched the bed next to which Miller was standing when he was captured and found three more handguns under its mattress.  The agents also found ammunition in a dresser drawer and in the closet in that room.  They also noted that there was clothing for an adult male in the closet.

---

[2] State Rec., Vol. 1 of 5, Bill of Information. Miller and a co-defendant, Tammy Mitchell, were jointly charged in the four-count bill of information.

[3] Id., Minute Entry, 4/20/98.

[4] This charge was ultimately dismissed on September 30, 1999.  Id., Minute Entry, 11/30/99.

2

While Miller was being arrested and searched, other agents swept through the house to secure the premises. Also present were Tammy Mitchell, who was arrested, and two children.  Agents entering the last room in the house observed in plain view two triple beam scales and a bottle of formaldehyde.  The agents called for canine backup; and when the dog arrived, it "alerted" on a small safe which was inside the bedroom where Miller was apprehended.  After the dog indicated contraband was inside the safe, the agents broke into the safe by removing its hinges.  They found a large amount of cocaine, several bags of marijuana, approximately $1000.00, and a Sewerage and Water Board bill addressed to the defendant at the Flood Street residence.  The defendant denied any ownership of the safe or its contents.  Detective Clarence Gillard arrived at the residence at some point after the parole and probation officers requested assistance, and he stated that he processed the evidence found in the house. He identified forty-three ziplock bags, three small plastic bags, and two large plastic bags containing green vegetable matter and two plastic bags containing a white powder.

Criminalist Joseph Tafaro testified that he analyzed the substance seized from 1826 Flood and determined that they were cocaine and marijuana. He stated that the weight of the cocaine was 136.1 grams which included weight of the plastic bag.  He further stated that the plastic bag weighed approximately 1 gram.

The defendant testified that he did not live at 1826 Flood and that he had given his parole officer three other addresses at which he could be found.  He stated that he was at that address because Tammy Mitchell had called him to take her and the children, of whom he was the father, to the doctor.  He denied that any drugs or ammunition were found on his person, and he stated that he did not know what was in the safe.  He testified that the male clothing found in the house belonged to someone named Calvin whom Ms. Mitchell was seeing.  He stated that the Sewerage and Water Board bill was in his name because Ms. Mitchell had asked him to get the account in his name.[5]

---

[5] <u>State v. Miller</u>, 817 So.2d 511 (La. App. 4th Cir. 3/20/02) (2000 KA 1109, *2-3) (Table); State Rec., Vol. 4 of 5.

Miller was found guilty of both counts after a one-day jury trial on April 12, 1999.[6] Miller was sentenced to 20 years imprisonment for possession of marijuana with intent to distribute.[7] He was adjudicated as a second felony offender on the possession of cocaine charge, and sentenced to 50 years imprisonment without benefit of parole, probation or suspension of sentence, to run concurrently.[8]

On March 20, 2002, the Louisiana Fourth Circuit Court of Appeal affirmed Miller's convictions. The court of appeal rejected Miller's counseled (1-3) and pro-se (4-6) assignments of error: (1) the trial court erred in denying his pretrial motion to suppress; (2) the State presented insufficient evidence to support the conviction for possession of marijuana with intent to distribute; (3) his sentences were excessive; (4) the trial court erred in denying his motion to dismiss defense counsel; (5) the trial court erred in finding him to be an habitual offender; and (6) the trial court erred in sentencing him as an habitual offender without first vacating his original sentence.[9]

---

[6] State Rec., Vol. 1 of 5, Minute Entry 4/12/99.

[7] Id., Minute Entry 5/24/99.

[8] Id., Minute Entry 6/15/99, Multiple Bill of Information.

[9] State v. Miller, 817 So.2d 511 (La. App. 4th Cir. 3/20/02) (2000-KA-1109) (Table); State Rec., Vol. 4 of 5. The court of appeal amended Miller's habitual offender sentence on the cocaine count to prohibit parole eligibility for only the first ten years, and affirmed as amended.

4

Miller sought review to the Louisiana Supreme Court, raising only the three counseled claims (motion to suppress, sufficiency of the evidence, and excessive sentence).  The Louisiana Supreme Court denied relief without stated reasons on May 9, 2003.[10]

On or about April 30, 2004, Miller attempted to file an application for post-conviction relief in the state district court.[11] In that application, he raised the following claims:  (1) he received ineffective assistance of trial counsel in the following respects: (a) failure to conduct adequate pretrial preparation/investigation; (b) failure to call witnesses to corroborate his testimony and to present expert forensic testimony; (c) failure to present exculpatory evidence at trial; and (d) failure to impeach parole officers' testimony at trial; (2) he was denied the right to counsel of his choice and was forced to proceed to trial with unprepared defense counsel; and (3) the search and seizure was illegal and in violation of the Fourth Amendment.[12] Ultimately, the Louisiana Fourth Circuit Court of Appeal, on Miller's application for mandamus relief, ordered the state

---

[10] State v. Miller, 843 So.2d 388 (La. 5/9/03) (2002-KO-1458), State Rec., Vol. 4 of 5.

[11] State Rec., Vol. 1 of 5, Inmate Withdrawal Request for PCR Mailing, dated 4/30/04. Neither the district court docket master nor minute entries reflect that any such application was ever filed, and the state court record contains no original copy of the pleading.  Rec. Doc. 14, State's Response to Petition for Habeas Corpus Relief, p. 5.

[12] Id., Vol. 1 of 5.

district court to consider his 2004 application for post-conviction relief.[13]  The state district court found the writ application untimely, reasoning that "the trial court record does not contain a timely or untimely filed application for post conviction relief."[14]  Miller sought supervisory writs to the Louisiana Fourth Circuit Court of Appeal, on the same grounds as those presented in his state district court application for post-conviction relief. On June 1, 2012, the court of appeal denied relief, stating:

> After reviewing the claims the Relator raises in his application for post-conviction relief, this court finds that the Relator has failed to show that his counsel was ineffective, La. C.Cr.P. art. 930.2.  The Relator's second and third claims are repetitive of the claims that this court previously denied on the Relator's appeal. La. C.Cr.P. art. 930.4.[15]

Miller filed a writ application in the Louisiana Supreme Court raising the same three claims.  On October 12, 2012, the Louisiana Supreme Court denied relief without stated reasons.[16]

On November 19, 2012, the Clerk of Court filed Miller's federal application for *habeas corpus* relief. In his application, Miller asserts four claims:  (1) he received ineffective assistance

---

[13] State v. Miller, 2012-K-0453 (La. App. 4th Cir. 4/11/12), State Rec., Vol. 5 of 5.

[14] State v. Miller, No. 396-824 "H" (State District Court Judgment on post-conviction 4/19/02), State Rec., Vol. 5 of 5.

[15] State v. Miller, 2012-K-0739 (La. App. 4th Cir. 6/1/12), State Rec., Vol. 5 of 5.

[16] State ex. rel. Miller v. State, 99 So.3d 45 (La. 10/12/12) (2012-KH-1371), State Rec., Vol. 5 of 5.

of counsel; (2) the Louisiana state parole board violated his due process rights and the separation of powers doctrine when it issued a warrant for his arrest following a parole violation; (3) the State witnesses committed perjury and offered conflicting and inconsistent testimony at trial; and (4) police and parole officers obstructed justice by altering and planting evidence.[17]

The State filed a response conceding that the federal application is timely.[18]  The State also concedes that Miller has exhausted four specific theories of his ineffective assistance of counsel claim.  However, the State argues that the remainder of his claims are unexhausted; and because any attempt to raise them now in the state courts through a properly filed post-conviction relief application would be rejected as untimely, they should be considered procedurally defaulted.

II.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal

---

[17] Rec. Doc. No. 3, Amended Petition.

[18] Rec. Doc. No. 14, State's Response, p. 11.

7

habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); <u>see</u> <u>also</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." <u>Bell</u>, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established
> precedent if the state court applies a rule that
> contradicts the governing law set forth in the [United
> States] Supreme Court's cases. A state-court decision
> will also be contrary to clearly established precedent if
> the state court confronts a set of facts that are
> materially indistinguishable from a decision of the
> [United States] Supreme Court and nevertheless arrives at
> a result different from [United States] Supreme Court
> precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation

marks, ellipses, brackets, and footnotes omitted), cert. denied,

131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United

States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable
> application" of this Court's clearly established
> precedent in two ways. First, a state-court decision
> involves an unreasonable application of this Court's
> precedent if the state court identifies the correct
> governing legal rule from this Court's cases but
> unreasonably applies it to the facts of the particular
> state prisoner's case. Second, a state-court decision
> also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends
> a legal principle from our precedent to a new context
> where it should not apply or unreasonably refuses to
> extend that principle to a new context where it should
> apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has

noted that the focus of this inquiry "is on whether the state

court's application of clearly established federal law is

objectively unreasonable, and we stressed in Williams that an

unreasonable application is different from an incorrect one." Bell,

535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th

Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

III. <u>Petitioner's Claims</u>

    A.   <u>Ineffective Assistance of Counsel</u>

    Miller claims that he was denied effective assistance of counsel. Miller offers a lengthy, convoluted list of theories in his federal petition in support of his claim of ineffective assistance.[19] These theories cover the gamut from pretrial investigation through trial and sentencing.[20] However, a review of

_____

    [19] Rec. Doc. No. 3, Amended Petition, pp. 24-29.

    [20] Miller submitted a form petition only and no memorandum in support. As best as can be discerned based on Miller's somewhat rambling and difficult to decipher factual recitation of counsel's shortcomings, he faults counsel for, among other things: failure to procure and preserve essential documents concerning the parole revocation and arrest; failure to object regarding misconduct by the court;  failure to file an ineffective assistance claim against Kevin Boshea; failure to procure and analyze the NOPD incident report, pre-arrest and post-arrest/pre-arraignment documentary records;  failure to assert the unanswered motion for a speedy trial; failure to devise a defense by the morning of trial; failure to preserve the record regarding conversations about proceeding to trial with or without counsel; failure to advise him regarding the right to self-representation; failure to ensure he received a fair and impartial trial when discussing with petitioner whether to proceed with a judge or jury trial; failure to challenge the basis for his parole violation and subject the State's case to meaningful adversarial testing; failure to object to the State's use of a non-existent felony status conviction which served as the basis for the felon in possession of a weapon charge; failure to object to evidence tampered with by the State and presented to the jury; failure to impeach parole officers' conflicting testimony regarding the petitioner's location at the residence; failure to poll the jury; failure to procure copies of voir dire, jury verdicts, and opening/closing statements as requested by appellate counsel; failure to impeach the state witnesses as to their identification of an "unidentified black male subject" prior to entering the house; failure to object at sentencing to the validity of a prior felony conviction; improperly referring on the morning of trial to evidence being seized from defendant's

the state court record shows that Miller raised only four specific theories of ineffective assistance of counsel to the state courts on post-conviction review:   (1) failure to conduct adequate pretrial preparation, namely investigation into Miller's claims that he did not reside at 1826 Flood Street and the circumstances surrounding parole officers' entry of the residence; 2) failure to call layperson witnesses, including Tammy Mitchell and other neighbors, and to call expert witnesses to explore forensic issues such as fingerprints and DNA; (3) failure to present exculpatory evidence at trial, namely other papers found in the safe; and (4) failure to impeach parole officers' testimony at trial.

"A fundamental prerequisite to federal habeas relief under §2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir.1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)); accord Preiser v. Rodriquez, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); Nobles v. Johnson, 127 F.3d 409, 419 (5th Cir. 1997).  "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been *fairly presented* to the highest state

_____

apartment when residency was not established; and failings related to the multiple offender bill. Giving Miller every benefit of the doubt and construing his pro se pleadings broadly, the Court will presume that Miller intended to urge all theories of ineffective assistance of counsel previously raised and properly presented in the state courts.

court." Whitehead, 157 F.3d at 387 (citing Picard v. Connor, 404 U.S. 270, 275-78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).

"A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents *new legal theories* or *new factual claims* in his federal application." Id.(emphasis added)(citing Nobles, 127 F.3d at 420). Even when ineffective assistance of counsel is raised in the state courts, the claim is not exhausted where the petitioner did not raise or mention the same basis in the state court proceedings that are asserted in a federal petition. See Ogan v. Cockrell, 297 F.3d 349, 358 (5th Cir.2002) ("Because Ogan is now proceeding on a different theory than that advanced in the state habeas court, we find this ineffectiveness of habeas counsel claim to be unexhausted."); Burns v. Estelle, 695 F.2d 847, 849-50 (5th

Cir.1983) (factual bases underlying the ineffective assistance of counsel claim were "significantly different" from those raised in state court, and therefore, were not exhausted).

Miller presented his specific claims of ineffective assistance of counsel to the state district court, which found the claims procedurally barred as untimely.  Miller presented the same claims to the court of appeal.  Despite the district court's ruling, the court of appeal ruled on the merits of Miller's ineffective assistance of counsel claims, finding that Miller "failed to show that his counsel was ineffective."  Miller then presented these claims to the Louisiana Supreme Court which denied relief without stated reasons.

The United States Supreme Court has clearly held that when the last state court judgment in a particular series of judgments does not indicate whether it is based on a procedural default, such as untimeliness, or on the merits of a claim, it must be presumed that the court relied upon the same grounds as the last reasoned state court opinion. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991). In this instance, the last reasoned state court opinion before this particular one-word denial by the Louisiana Supreme Court was the opinion of the Louisiana Fourth Circuit Court of Appeal, denying Miller's ineffective assistance of counsel claim on the merits. Under these circumstances, it cannot be assumed that the Louisiana Supreme Court's denial of Miller's ineffective assistance claim was

14

on grounds of untimeliness or any other procedural default; instead, it must be presumed to be a decision on the merits.

The Court agrees with the State's position that to the extent these specific claims of ineffective assistance of counsel were presented to the state courts and the state courts had an opportunity to review them, Miller's ineffective assistance claims on these specific theories are properly before this Court for review. Therefore, the Court will proceed to address the merits of Miller's exhausted ineffective assistance of counsel claims at this juncture.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir.1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

15

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir.1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir.1985).

To prevail on the prejudice prong of the Strickland test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must

16

review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." <u>Crockett</u>, 796 F.2d at 793.

Because the state courts rejected petitioner's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir.2002). Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims is in fact doubly deferential:

> The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable. This is different from asking whether defense counsel's performance fell below <u>Strickland's</u> standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the

17

rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, ----, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 785–86 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting <u>Strickland's</u> high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added).

18

### 1.   Pretrial investigation

Miller argues that counsel failed to conduct adequate pretrial investigation into Miller's claim that he did not live at 1826 Flood Street and that the items in that residence did not belong to him.   Miller speculates this could have been accomplished if counsel had (1) interviewed residents at the other addresses where Miller claimed he resided, (2) interviewed Tammy Mitchell and various unnamed neighbors, and (3) collected tangible forensic evidence such as DNA or fingerprints from the Flood Street residence to show he did not touch items found in the residence. He also speculates that counsel could have found neighbors who might have seen and been able to offer accounts about the manner in which parole officers entered the residence to show that the entry and subsequent search and seizure of evidence was illegal.

To be successful under Strickland, a petitioner "'who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" Gregory v. Thaler, 601 F.3d 347, 352 (5th Cir.2010) (quoting United States v. Green, 882 F.2d 999, 1003 (5th Cir.1989)); Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir.1998). The petitioner must provide factual support demonstrating what exculpatory evidence further investigation would have revealed. Moawad, 143 F.3d at 948; Brown v. Dretke, 419 F.3d 365, 375 (5th Cir.2005); Davis v. Cain, No.

19

07-6389, 2008 WL 5191912, at * 10 (E.D.La. Dec. 11, 2008) (order adopting referenced Report and Recommendation). A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result. <u>Diaz v. Quarterman</u>, 239 F. App'x 886, 890 (5th Cir.2007) (citing <u>Strickland</u>, 466 U.S. at 696). For these reasons, brief and conclusory allegations that the attorney's representation was deficient because of a failure to investigate and develop useful evidence will not suffice. See <u>Anderson v. Collins</u>, 18 F.3d 1208, 1221 (5th Cir.1994).

In this case, Miller has offered nothing but broad and purely speculative assertions that further investigation and interviews with the persons Miller suggests, or DNA and fingerprint evidence (specifically a showing that Miller's DNA and fingerprints could *not* be found), would have established that Miller did not live at the Flood Street residence and thus could not be found guilty of the crimes. Similarly, Miller's assertion that unidentified neighbors would have provided evidence that police and parole officers entered the residence illegally, is entirely speculative and unsupported. Miller's conclusory statements regarding what these individuals would have said or what the forensic tests would have shown is insufficient to demonstrate ineffective assistance. Miller's argument falls well short of proving the existence of

exculpatory evidence that would have been found through further investigation.

Miller has brought forth no evidence establishing that there is a reasonable probability that further investigation would have revealed any information which, if it had been discovered and presented at trial, would have resulted in a different outcome at trial. Without such evidence, he cannot make the required showing that he was prejudiced by the allegedly inadequate investigation and his claim necessarily fails. Everett v. Louisiana, Civ. Action No. 08-4745, 2009 WL 1971370, at *5 (E.D.La. July 7, 2009); see also Twillie v. Rader, Civ. Action No. 12-1421, 2012 WL 3990392, at *5 (E.D.La.Aug.14, 2012), adopted, 2012 WL 3990490 (E.D.La. Sept. 10, 2012).

    2.   Failure to call witnesses at trial

In a related claim, Miller argues that counsel failed to call all potential lay witnesses and expert witnesses to support his claim as to where he actually lived and the circumstances surrounding the officers' entry of the residence.  The only witness he mentions by name is Tammy Mitchell, a co-defendant whose trial was scheduled after Miller's.

As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not
> favored on federal habeas review because the presentation
> of witnesses is generally a matter of trial strategy and
> speculation about what witnesses would have said on the

> stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir.2010) (citations, quotation marks, and brackets omitted); see also Day v. Quarterman, 566 F.3d 527, 538 (5th Cir.2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, petitioner has produced no evidence whatsoever, such as affidavits from uncalled witnesses, demonstrating that they would have testified in a manner beneficial to the defense. He has only identified one uncalled witness by name and he has failed to provide anything to support his speculation as to her purported testimony.  Therefore, he clearly has not met his burden with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir.1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D.La. July

22

7, 2011); <u>Anthony v. Cain</u>, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D.La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, Nos. 3:08-CV-0032 and 3:03-CR-01 88, 2009 WL 2151844, at * 10 (N.D.Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director</u>, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D.Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

### 3.  Failure to present exculpatory evidence

Miller claims that counsel was deficient in failing to produce exculpatory evidence at trial.  He speculates that other papers found in the residence would have refuted the incriminating utility bill bearing his name.  However, Miller has failed to identify the alleged documents.  He offers no specifics regarding the "papers" that in his estimation should have been placed before the jury. Even if the papers contained names of individuals other than Miller's, that alone would not establish proof that Miller did not live at the Flood Street residence.  Miller has failed to show that

counsel was deficient in failing to present exculpatory evidence.

4.   Failure to impeach witnesses

Miller also complains that counsel performed inadequately when conducting the cross-examination of two parole officers.  Miller argues that the two officers' accounts as to where they observed petitioner when they entered the house differed from one another, and also differed from the State's pretrial answer to the defense's motion to suppress, which states that the parole agents approached Miller in the bedroom "as he was bending over a bed, concealing three loaded handguns."[21]  Miller characterizes the discrepancy between the accounts as significant and argues that counsel should have impeached the parole agents' trial testimony.

However, it is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F.Supp.2d 831, 859 (W.D.Tex.2004), aff'd, 135 Fed. App'x 769 (5th Cir.2005); see also Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D.La. Oct. 16, 2009), aff'd, 444 Fed. App'x 835 (2011); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D.La. May 7, 2009), aff'd, 359 Fed. App'x 462 (5th Cir.2009), cert. denied, 130 S.Ct. 2107 (2010); Packnett v. Cain,

---

[21] State Rec., Vol. 2 of 5, Answer to Motion to Suppress, p. 1.

Civ. Action No. 06-5973, 2008 WL 148486, at * 11 (E.D.La. Jan. 10, 2008); Parker v. Cain, 445 F.Supp.2d 685, 710 (E.D.La.2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such tactical matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689.

Aside from whether the State's answer even could have been used as impeachment evidence at trial, it would have served no purpose. In this case, the jury heard the testimony of both agents and therefore could consider and weigh any perceived discrepancy in their accounts.

Additionally, given the agents' differing viewpoints and the time frame involved, the descriptions cannot be viewed as conflicting, nor the discrepancies as significant. As stated by the Fourth Circuit during an analysis of the sufficiency of the evidence, any perceived discrepancies as to where the parole officers first saw Miller, "appear to be due to the different positions of the agents as they arrived at the residence and when they entered it."[22] Nor is the State's answer contradictory. The State's brief factual statement in answer to the motion to suppress

_____

[22] State v. Miller, 817 So.2d 511 (La. App. 4th Cir. 3/20/02) (2000-KA-1109 at *14), State Rec., Vol. 4 of 5.

can be viewed, as the State argues, as merely discussing where the agents *finally* apprehended Miller.  On this showing, Miller has failed to demonstrate any deficiency in counsel's cross-examination.

In summary, Miller's purely speculative and unsupported attempt to second-guess counsel's pretrial preparation and strategy is wholly inadequate to meet his burden of proof to show either that his counsel performed deficiently or that prejudice resulted. Miller has not shown that the denial of relief on his ineffective assistance of counsel claim was contrary to, or an unreasonable application of, <u>Strickland</u>.

IV.  <u>Procedural Default of Remaining Claims</u>

Miller's remaining claims include: (1) ineffective assistance of counsel based on theories not raised previously in the state courts, (2) the Louisiana state parole board violated his due process rights as well as the separation of powers doctrine when it issued a warrant for his arrest following a parole violation, (3) parole agents presented perjured testimony at trial regarding the circumstances of their entry of 1826 Flood Street and locations where the drugs were located within the residence; and (4) the police and parole officers obstructed justice by altering and planting evidence.

Because the unexhausted nature of the ineffective assistance claims was addressed earlier in this report, the undersigned will

proceed to address the procedural history of Miller's remaining three claims at this time. Although Miller claims he addressed the due process/separation of powers issue in his 2004 post-conviction relief application as a component of ineffective assistance of counsel,[23] a review of his writ applications – and specifically his application to the Louisiana Supreme Court – reveals that he did not, in fact, challenge in any context on collateral review, the legal authority of the parole board to issue the arrest warrant; nor was the issue raised on direct appeal. This claim is unexhausted.

As for Miller's claim of perjured testimony by parole officers, it was raised in a *pro se* assignment of error on direct appeal to the Louisiana Fourth Circuit Court of Appeal. However, he abandoned his pro se assignments of error – in favor of advancing only the claims raised by counsel on appeal – in his writ application to the Louisiana Supreme Court. The claim was not raised on collateral review. This claim was therefore never fairly presented to the highest state court and is unexhausted.

Miller's final claim – that police and parole officers obstructed justice – was not raised in any of the state courts on either direct or collateral review.

As previously discussed, it is well-established that a

---

[23] Rec. Doc. No. 3, Amended Complaint, pp. 23-24.  At the same time, however, Miller appears to concede that he failed to exhaust the issue.  See Id., p. 8.

petitioner must exhaust his available state court remedies before proceeding to federal court for habeas relief. 28 U.S.C. § 2254(b)(1)-(3); Rose v. Lundy, 455 U.S. at 519. As the Supreme Court explained in Picard v. Connor, 404 U.S. 270, 275 (1971) (citations and quotations omitted):

> The exhaustion-of-state remedies doctrine ... reflects a policy of federal-state comity, ... an accommodation of our federal system designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.... We have consistently adhered to this federal policy, for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.

Related to the exhaustion requirement is the doctrine of procedural default, another separate but distinct limit on the availability and scope of federal habeas review. See Nobles v. Johnson, 127 F.3d 409, 420-423 (5th Cir.1997), cert. denied, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). "'A procedural default ... occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims would now find the claims procedurally barred.'" Bourg v. Prince, 2010 WL 1552723, *3 (E.D.La. March 19, 2010) (Chasez, MJ.), adopted, 2010 WL 1552728 (E.D. La. April 14, 2010) (Africk, J.) (quoting Nobles, 127 F.3d at 420 (additional quotation and citation omitted)).

There are two factual scenarios under which a petitioner is procedurally barred from seeking federal habeas corpus relief. One

is where "a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ('traditional' procedural default)", and the other is where "the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ('technical' procedural default)." Papillion v. Cain, 2007 WL 3046063, *9 (W.D.La. Jul. 31, 2007), citing Bledsue v. Johnson, 188 F.3d 250, 254-255 (5th Cir.1999), citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1986), and O'Sullivan v. Boerckel, 526 U.S. 838 (1999). With respect to the above-described " 'technical' procedural default", the court explained:

> A petitioner has "technically exhausted" his federal claim if he fails to properly and timely present his claim to the Louisiana courts and is time-barred from seeking relief in the Louisiana courts because he has allowed his state court remedies to lapse. In such a case, ... there is no difference between non-exhaustion and procedural default. Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted.

Papillion, 2007 WL 3046063 at *9 (citations omitted).

In this case, it is reasonable to conclude that Miller is now unable to litigate his remaining claims in the Louisiana courts. Based on the record, any attempt to litigate this claim now would likely be dismissed as time-barred by the provisions of La.C.Cr.P. art. 930.8.

Federal habeas review of a procedurally defaulted claim is barred "... unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. at 750-51.

A.   Cause and Prejudice

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). In this case, Miller has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.[24] The Court's review of the record does not support a finding that any factor external to the defense prevented Miller from raising the claim in a procedurally proper manner. The record does not reflect any action or inaction on the part of the State which prevented him from doing so. In addition, neither pro se status nor ignorance of the law is

_____

[24] To the extent that petitioner may claim that any of his numerous grounds for ineffective assistance of counsel constitute cause for his default, petitioner's argument would be unavailing because the ineffective assistance claims were technically procedurally defaulted. See Edwards v. Carpenter, 529 U.S. 446, 452, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (noting that in order for a claim of ineffective assistance of counsel to serve as cause for a procedural default, the ineffective assistance claim must itself be presented to the state courts).

sufficient cause to excuse a procedural default. See Saahir v. Collins, 956 F.2d 115, 118 (5th Cir.1992).

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hoque v. Johnson, 131 F.3d 466, 497 (5th Cir.1997) (citing Engle v. Isaac, 456 U.S. 107, 134 n. 43 (1982)). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir.1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir.1977)).

Miller's claims are therefore procedurally barred from review by this federal *habeas* court. See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir.1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), vacated on other grounds, 522 U.S. 87 (1998).[25]

B.   Fundamental Miscarriage of Justice

Miller may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Hoque, 131 F.3d at 497 (citing Sawyer v. Whitley, 505

---

[25] The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument *sua sponte*. Id.

U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray v. Carrier, 477 U.S. 478, 496; Glover, 128 F.3d 900, 902 (5th Cir. 1997). To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. Campos v. Johnson, 958 F.Supp. 1180, 1195 (W.D.Tx.1997) (footnote omitted); Nobles, 127 F.3d 409, 423 n. 33 (5th Cir. 1997)(actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Miller does not present any claim and the record contains nothing that suggests his actual innocence on the underlying conviction. He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default. He, therefore, has failed to overcome the procedural bar to his claims. The claims are procedurally barred and should be dismissed with prejudice for that reason.

32

## RECOMMENDATION

**IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[26]

New Orleans, Louisiana, this 10th day of December, 2013.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

---

[26] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

33